Allen, J.
The defendants were consignees and factors of Rodman & Sons, the assignors of the plaintiff, receiving their goods for sale on commission, and making advances to them in money or of credit, as occasion required, and to the extent of these advances, whether of credit or of money, they had a lien on the goods in their hands. In the course of the dealings between the parties, among other transactions, Rod-man & Sons drew bills on the defendants, fifteen in number, payable at a future day, which were accepted by the defendants, and discounted at the instance of the drawers, and for their benefit, which were outstanding at the time of the failure of the drawers, and also at the time of the subsequent failure of the acceptors. These bills were drawn against the consignments of goods for sale, and accepted on the credit of such consignments. The defendants, the acceptors, were, as between themselves and the drawers, sureties of the latter. The debts created by the bills were the proper debts of the drawers, and not of the acceptors. It is true, in form, the *297 acceptors were the debtors primarily liable. A bill is presumed to be drawn against funds in the hands of the drawee, and an acceptance is an acknowledgment on the part of the acceptor that he has funds of the drawer in his hands to the amount of the bill, and this is the legal effect of the bill in the hands of a bona fide holder; but, as between the parties to the contract, the presumption may be rebutted and their true relation shown, and the liability of the one to the other will be that resulting from the true rather than the apparent relation of each to the other. (Griffith v. Reed, 21 Wend., 502.)
The acceptances were for the accommodation of Eodman & Sons, and they and their property were primarily liable for their payment. The merchandise in the hands of the defendants for sale, and against which they were drawn, constituted a fund for their payment; but if that fund should prove insufficient to reimburse the acceptors, the drawers would be liable for the deficiency upon the implied promise, resulting from the relation of the parties, and the transaction, and course of dealing between them, and as for so much money paid for them. (Gihon v. Stanton, 5 Seld., 476 ; Marfield v. Goodhue, 3 Comst., 62; Blackmar v. Irwin, 28 N. Y., 67.) Eodman & Sons were, therefore, bound to take up the acceptances at maturity, or to indemnity the defendants from the property upon which the defendants had a lien, or their other means, and whether the defendants were indemnified, or the bills paid from the particular fund or the general resources of the drawers, would be immaterial. The bills were, in fact, paid and discharged from the particular fund pledged to and set apart for their payment, and by a transfer of the goods directly to the holders of the acceptances, and by the defendants as the factors and agents of the drawers. The defendants parted with no value, and paid no money or other thing upon or for the bills, other than the goods of the principal debtors. The drawers did, from their own means, retire and satisfy the acceptances, and fully indem nify the defendants, their sureties, against loss and damage.
*298 If the defendants are entitled to charge the drawers the face and full amount of the acceptances, then they should credit them with the same amount for the goods sold, for that is precisely what they have received, and whether the funds were of that value is not material. The factors must credit their principal the amount actually received. A bare statement suffices to show that the defendants, having paid the acceptances with the funds and means of their principals, the drawers, and having "paid nothing themselves or from their own means, cannot have become the creditors of the drawers for any amount. If the defendants had paid the acceptances from their own funds, their action against the drawers would not have been upon the bills. No action would lie at their suit against the drawers, as such, but the action would be upon the implied promise to indemnify, and for money paid to and for their use, and the recovery would necessarily be limited to the amount actually paid. A surety can only claim of his principal indemnity, and the sum actually paid for the latter. Had the defendants, instead of lending their acceptances, lent their promissory notes to Hodman & Sons, and been compelled to pay the same, the remedy against the latter would not have been upon the notes, but for money paid, and the notes lent would have been but evidence, in part, of the transaction, and the recovery would necessarily have been for the money actually paid for the principal debtors.
No question is made in this court as to the right of the defendants to their commission as upon a sale of the goods in the ordinary form, and therefore we do not consider it. But for the error of the referee in allowing the defendants for moneys they never paid, and the difference between the actual value of the merchandise which the holders of the acceptances agreed to value and receive as the equivalent of these bills and in satisfaction of them, and the amount actually due upon such bills, the 'judgment must be reversed and a new trial granted.
All concur. Judgment reversed.